ALEJANDRO RUIZ SOLER, demandante y apelado, *v.* ANUNCIACIÓN MORAZZANI Y BOSCH, demandada y apelante.

No. 4413.—*Visto:* Abril 20, 1928. *Resuelto:* Diciembre 18, 1928.

*Benet & Souffront,* abogados de la apelante; *M. Figueroa del Rosario,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

El Doctor en medicina Alejandro Ruiz Soler contrajo matrimonio en 1908 con Anunciación Morazzani Bosch habiendo procreado cuatro hijos en esa unión, teniendo el mayor 16 años de edad y el menor seis años cuando en febrero de 1926 el marido presentó la demanda de divorcio inicial de este pleito, que fundó en abandono por parte de su

esposa por más de un año. Se opuso ella a esa demanda y formuló contrademanda para que se decretase el divorcio por abandono de su marido. Celebrado el juicio la Corte de Distrito de San Juan dictó sentencia declarando con lugar la demanda con los pronunciamientos consiguientes y sin lugar la contrademanda, contra cuyo fallo ha sido interpuesto este recurso de apelación por la parte a quien perjudica.

Como las alegaciones de las partes son contradictorias respecto a cuál de los consortes abandonó al otro también resultó contradictoria la evidencia en ese particular, conflicto que dirimió expresamente la corte inferior dando entero crédito a la prueba del demandante y basándose en ella para fundar su sentencia. Para llegar a esa conclusión dijo la corte que apenas si hay prueba que no sea la de ambas partes contendientes: que la solución de este caso dependía de la credibilidad que haya de darse a una u otra parte y que el demandante, por su modo de declarar y por la forma en que se expresó, le pareció ser un hombre que ha sufrido mucho por la situación que atravesaba su hogar y que al declarar lo hacía con pleno conocimiento de lo que ello significaba para él.

No hay discusión entre las partes en que en la fecha en que fué presentada la demanda hacía varios años que los esposos no vivían juntos y en que desde la separación no han vuelto a tratarse más.

En consecuencia de lo expuesto los motivos de error alegados por la apelante hacen relación casi exclusivamente a la apreciación que de la prueba hizo la corte sentenciadora, y así dice: que hubo error al declarar probado que la demandada abandonó al demandante: al declarar que la demandada se negó a seguir a su marido a la ciudad de Caguas: al resolver el conflicto de la evidencia en contra de la demandada: al declarar que el demandante estuvo justificado en abandonar el hogar conyugal y al declarar sin lugar la con-

trademanda. Podemos considerarlos conjuntamente y así lo haremos excepto uno de ellos.

Los esposos litigantes vivían con sus hijos en una casa de la Calle Canals del barrio de Santurce de esta ciudad, casa que según alegación de la contrademanda enmendada, que es la que tenemos ante nosotros, pertenece a la esposa por haberla comprado con bienes privativos suyos obtenidos por herencia. El apelado fué Comisionado de Sanidad Insular y al cesar en ese cargo tuvo que buscar nueva orientación para ganarse la vida con su profesión y estableció una oficina médica en una casa de Santurce pero después, creyendo que la ciudad de Caguas sería mejor campo para sus actividades, se trasladó a ella a principios del año 1923 y alquiló una casa grande para tener a su esposa y a sus hijos, y como cuando hizo su traslado hacía unos seis meses que los consortes no vivían juntos escribió por correo a su esposa para que con los hijos fuese a residir en Caguas con él: no tuvo contestación a esa carta y entonces comisionó a su hermano José para que se entrevistara con ella con el fin dicho, entrevista que tuvo lugar habiendo contestado la esposa que no quería vivir con su marido. Algunos meses después quitó el demandante la casa de Caguas porque volvió a San Juan como médico de los asilos pero al mes y medio volvió a Caguas donde fué nombrado oficial de Sanidad, teniendo que residir allí por ese cargo, y donde alquiló otra vez casa capaz para su familia; volviendo a escribir otra vez a su esposa para que fuese a vivir con él. No tuvo tampoco contestación a esa carta enviada por correo y volvió a comisionar a su hermano José para que la apelante fuese a su hogar de Caguas, requerimiento que fué hecho sin éxito. A pesar de esto el marido sostuvo esa casa por dos años hasta que en vista de sus crecidos gastos por sostener esa casa puesta con sirvientes y pagar además los gastos de la casa en que vivían su esposa e hijos la quitó y desde entonces vive en casas de familia.

El apelado se limitó a decir en su interrogatorio directo que cuando fué por primera vez a Caguas hacía unos seis meses que no vivía con su esposa e hijos pero que pensaba poner otra casa para su esposa, como la puso en Caguas, y fué a repreguntas de la parte contraria que manifestó que en un disgusto que tuvo con su esposa ésta lo echó de la casa diciéndole "bueno, ya es tiempo de que te largues de esta casa; tú sabes que esta casa ha sido comprada con mi dinero y me haces el favor de irte ahora mismo de aquí"; y que por esa humillación no volvió a vivir en aquella casa con su esposa hasta que pudiera ofrecerle otra en donde no pudiera lanzarlo de ella. La apelante admitió en su declaración que existió ese disgusto y negó que echase de la casa a su marido; pero que las cosas ocurrieron como dice el apelante lo comprueba en algo el hecho de alegar ella innecesariamente en su contrademanda que la casa en que vivían, y ella vive, es de su exclusiva propiedad.

También admitió la demandada en su declaración que José Ruiz Soler estuvo en dos ocasiones a hablar con ella pero niega que fuese para que se uniese otra vez a su marido en Caguas sino, por el contrario, para decirle que su marido ya no le tenía afecto y que presentase la demanda de divorcio, a lo que ella se negó porque no quería divorciarse. Sin embargo la última manifestación de ella está en contradicción con su conducta solicitando el divorcio en su contrademanda y con su alegación de que hubo error en no declarar con lugar su reclamación para el divorcio. Ella también declaró que estaba dispuesta a vivir con su marido, pero, aparte de que tal aserto no concuerda con su conducta anterior y posterior a la demanda de su esposo, tal manifestación no puede enervar la acción del demandante, si éste tiene causa de acción. *Meléndez* v. *Pérez Díaz,* resuelto el 13 de noviembre de 1928, (pág. 811).

Tanto la apelante como el testigo José Ruiz Soler estuvieron conformes en que las entrevistas que ellos tuvieron y

a que nos hemos referido antes fueron secretas y en la sala de la casa, manifestando dicho testigo que las verificaba en esa forma para evitar que los hijos del matrimonio se enterasen de los disgustos de sus padres, y no obstante esto la apelante presentó como testigo a su madre, quien manifestó que cuando llegó José Ruiz Soler a la casa de la apelante ésta estaba con sus hijos en el comedor y al entrar en él dijo que su hermano no pensaba volver más a aquella casa y quería que ella le diese el divorcio; testigo que se contradijo pues después dijo que al entrar el testigo en la casa llamó a la apelante quien dejó a sus hijos y fueron a la sala donde conversaron pero los oyó desde otra habitación. En parecidos términos declaró Josefa Campesino, otra testigo de la apelante en cuanto a que había oído los términos de esa conversación en la sala desde otra habitación, declaraciones que no parecen verosímiles pues si ambos litigantes admiten que la conversación fué secreta no parece natural que pudiera ser en voz tan alta que fuese oída en otra habitación y mucho menos si era para hacer la proposición de divorcio.

Declaró también la apelante que ella hizo gestiones para que su marido volviese al hogar valiéndose de sus hijos porque lo veían con frecuencia, pero se limitó a esto sin presentar las declaraciones de sus hijos para saber si efectivamente hablaron con su padre sobre ese asunto y para conocer la contestación que les diera.

Como resumen de todo lo expuesto diremos que no habiéndose alegado pasión, prejuicio o parcialidad en la corte sentenciadora, opinamos que no cometió error en la resolución del conflicto de la evidencia al dar crédito a la de la parte demandante y fundar en ella su sentencia.

La única cuestión de derecho que surge en este pleito es la de si el hecho de haber dejado el marido la casa en que vivía con su esposa durante unos seis meses antes de poner casa otra vez en Caguas para ella y sus hijos y

de requerirla para que se trasladase a ella constituye abandono por su parte que le impida ejercitar con éxito la acción de divorcio.

Ya hemos visto que el apelado dejó de ir a la casa en que vivía con su esposa al decirle ella que se largase de la casa que había comprado con su dinero, pero no con el propósito de separarse de ella para siempre, como él dice, sino de vivir con su mujer en otra casa de donde no pudiera ser lanzado por ella, como lo demuestra el hecho de que unos seis meses después, cuando se trasladó a Caguas, puso casa allí para su familia y la requirió para que fuese a vivir en ella, por lo que no existe abandono por su parte, pues dadas las circunstancias de este caso no estuvo carente en absoluto de justificación su ausencia del hogar conyugal ni existió el propósito de poner término definitivamente a sus relaciones con su consorte. Fué la esposa la que con su conducta hizo imposible en aquella casa las relaciones conyugales y por esto no existe abandono por parte del marido sino por la esposa 19 C. J. pág. 61, pár. 116–117bb. En un caso de la Corte Suprema de Arizona, *Lundy* v. *Lundy*, 202 Pac. Reporter 809, bastante similar al presente pues viviendo el matrimonio en una casa propiedad de la mujer él se marchó del hogar conyugal al decir ella que se fuese de la casa y que no volviera, al ser confirmada la sentencia que declaró con lugar el divorcio por abandono solicitado por el marido, la corte dijo que la cuestión a resolver era cuál de los esposos abandonó al otro y que si la demandada dijo e hizo las cosas que declaró el demandante, la acción de éste al dejar la casa era natural y que el marido no tenía otra alternativa que la que hizo, y agrega: "La parte que deja la casa ordinaria y generalmente es la parte responsable de abandono. Esta regla, sin embargo, no es sostenible cuando una parte ha sido compelida a marcharse por las condiciones intolerables en el hogar conyugal."

*La sentencia apelada debe ser confirmada.*